```
                    UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)


                                    .
UNITED STATES OF AMERICA,           .  Case No. 2:21-mj-00196-1
                                    .
               Plaintiff,           .
     vs.                            .  U.S. Courthouse
                                    .  601 Market Street
ZACHARY JORDAN ALAM,                .  Philadelphia, PA 19106
                                    .
               Defendant.           .  Tuesday, February 2, 2021
. . . . . . . . . . . . . . . . .   .  12:52 p.m.
```

### PARTIAL TRANSCRIPT OF BAIL, REMOVAL,
IDENTITY, DETENTION HEARING
### HELD BEFORE THE HONORABLE RICHARD A. LLORET
### UNITED STATES MAGISTRATE JUDGE VIA VIDEOCONFERENCE

APPEARANCES:

For the Plaintiff:          United States Attorney's Office
                            By:  CHRISTINE E. SYKES, ESQ.
                            615 Chestnut Street, Suite 1250
                            Philadelphia, PA 19106
                            (215) 861-8441

For the Defendant:          Federal Community Defender Office
                            By:  MARIA A. PEDRAZA, ESQ.
                            601 Walnut Street, Suite 540
                            Philadelphia, PA 19106
                            (215) 928-1100




Audio Operator:             Michael Cosgrove, ESR


TRANSCRIBED BY:             Access Transcripts, LLC
                            10110 Youngwood Lane
                            Fishers, IN 46038
                            (855) 873-2223
                            www.accesstranscripts.com



        Proceedings recorded by electronic sound
   recording, transcript produced by transcription service.

1      (Proceedings commence at 12:52 p.m.)

2           THE COURT:  All right.  Do we have any more

3  Defendants located at the FDC?

4           THE COURT OFFICER:  Your Honor, I got two still.  I

5  got Mr. Alam coming up, and then I have Mr. -- I forget the

6  other guy's name, but I'll have him for you right after

7  Mr. Alam.

8           THE COURT:  Okay.  Let's take Mr. Alam now.  Thank

9  you, Officer.

10          Mr. Alam?

11          THE DEFENDANT:  Sir?

12          THE COURT:  Is this Mr. Alam in front of me now?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  My name is Judge Lloret.  The

15 first thing I want to take care of is we have to proceed

16 virtually by video instead of in person.  Normally, we proceed

17 by in-person proceedings, but because of the COVID-19

18 situation, we are forced to do it this way.  Do I have your

19 consent to proceed by video?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Very well.

22          Ms. Sykes, I understand we're here for initial

23 appearance and removal.  Is that correct?

24          MS. SYKES:  That is correct, Your Honor.  And there

25 is no conflict with the Defender's Association, and I took the

1 liberty of providing Ms. Pedraza with the necessary documents

2 yesterday.

3          THE COURT:  Very well.

4          Mr. Alam, you're charged with various charges in

5 connection with the break-in of the Capitol building on

6 January 6th.  Do you want me to appoint you an attorney to

7 represent you on these federal charges?

8          THE DEFENDANT:  As I understand -- actually, yes, I

9 do.  Yes.

10          THE COURT:  Yes?  Okay.  I have to ask you some

11 financial questions.  Do you have an income?  Do you have

12 employment or any type of income?

13          THE DEFENDANT:  Yeah.  I have --

14          THE COURT:  How much do you make a month?

15          THE DEFENDANT:  I make 15 an hour, so -- and I work

16 35 hours a week.

17          THE COURT:  Okay.  Do you have a -- do you own a

18 house?

19          THE DEFENDANT:  No.

20          THE COURT:  Do you own any cars?

21          THE DEFENDANT:  Yes.

22          THE COURT:  How many cars do you own?

23          THE DEFENDANT:  One.

24          THE COURT:  What's the value of the car,

25 approximately?

4

1                    THE DEFENDANT:  7,000.

2                    THE COURT:  Do you owe money on the car?

3                    THE DEFENDANT:  No.

4                    THE COURT:  Okay.  So you own it free and clear.  Is

5      that right?

6                    THE DEFENDANT:  Right.

7                    THE COURT:  Okay.  Do you have any cash on hand?

8      Obviously not with you right now, but do you have cash in your

9      possession at home?

10                    THE DEFENDANT:  I did have cash that was in my

11      property when I was arrested, and I don't know if I'm going to

12      get it back or not.

13                    THE COURT:  How much cash was it?

14                    THE DEFENDANT:  $2,700.

15                    THE COURT:  All right.  Do you have any bank

16      accounts?

17                    THE DEFENDANT:  I have one bank account.

18                    THE COURT:  How much money in the bank account?

19                    THE DEFENDANT:  Approximately $5,000.

20                    THE COURT:  And do you have any other assets of any

21      kind?

22                    THE DEFENDANT:  That's pretty much it.

23                    THE COURT:  Okay.  I find that the Defendant

24      qualifies.  I'm going to appoint the defenders to represent

25      him.

1          Ms. Pedraza, thank you for taking the appointment.

2          MS. PEDRAZA:  No problem, Your Honor.

3          THE COURT:  Thank you.

4          THE COURT:  Ms. Sykes, how does the Government wish

5  to proceed at this point with respect to the removal?

6          MS. SYKES:  Your Honor, we would be requesting that

7  Defendant be detained pending removal.

8          THE COURT:  Very well.

9          MS. SYKES:  I'm prepared to argue, if you want me to

10 now.

11         THE COURT:  Why don't we hold on for a second.  Let

12 me ask Ms. Pedraza.

13         Ms. Pedraza, have you had a chance to discuss the

14 removal matter with the client at all?

15         MS. PEDRAZA:  Yes, Your Honor, I was able to speak

16 with him this morning.  There would not be a stipulation to

17 removal, nor identity, nor probable cause.

18    (Portion from 12:26 p.m. to 1:03 p.m. previously

19 transcribed)

20         THE COURT:  Very well.  I'm satisfied that the

21 Government has correctly identified the individual who's before

22 me, Mr. Alam, as the individual who's charged in the

23 indictment -- charged in the charging instrument of the Capitol

24 incidents of January 6th.

25         Ms. Sykes, how does the Government wish to proceed

6

1  with respect to the detention of Mr. --

2           MS. SYKES:  Your Honor, with respect to detention, we

3  ask that the Defendant be detained pending transportation

4  (indiscernible) to the District of Columbia by the marshal

5  service.  At the time that -- well, I'll back up.  After the --

6  after this offense occurred, on January 12th, the FBI put out a

7  be on the lookout or a BOLO alert for the Defendant.

8           On the 14th, they were advised by a witness who was

9  related to Mr. Alam that that was, in fact, a picture of

10 Mr. Alam breaching the Capitol.  The FBI then spoke with that

11 witness, and that witness informed the FBI that Mr. Alam had

12 contacted that witness from a different telephone number than

13 that witness had previously known Mr. Alam to use.  In fact,

14 that individual has routine contact with Mr. Alam, and this is

15 the first time that Mr. Alam had used this different telephone

16 number to contact the witness.

17          Mr. Alam had been asking other family members if he

18 could stay with them.  Mr. Alam admitted to the witness that he

19 was sorry for the offenses that he had committed, but that he

20 was on the run because he was not going to go to jail.

21          He was -- despite the fact that he lives in the D.C.

22 area, he was found at -- living in a hotel, the Penn Amish

23 Motel in, like I said, Lancaster County, Denver, Pennsylvania.

24 At the time that agents executed a search warrant, they found

25 Mr. Alam in that motel room.  He was hiding behind the door.

1 At the time that they knocked and announced, he failed to open

2 the door and the agents were able to gain entry using a key

3 provided to them.

4          At that time, they found more than one cell phone on

5 him.  One appeared to be a flip phone that he may have been

6 using as an alternative means of communication.  At that time,

7 he was -- he -- the agents found unique clothing in -- within

8 his possession that matched the clothing in the screenshots

9 that were pulled from social media on the day of the Capitol

10 incident.  And they found a number of periodicals and documents

11 related to (indiscernible) and materials about living off the

12 grid -- in other words, living away from organized society.

13 And he also was driving a truck that had plates on it that came

14 back to an individual other than him.

15          And for all those reasons, we believe that he is a

16 risk of flight and needs to be detained pending his appearance

17 in the District of Columbia.

18          THE COURT:  Very well.

19          Ms. Pedraza?

20          MS. PEDRAZA:  Thank you, Your Honor.  As the

21 Government mentioned, Mr. Alam is a resident of the D.C. area.

22 He -- there would be no more proximate area that he could be

23 than if the Court would release him to reside with his mother

24 at an address that I could provide the Court should Your Honor

25 consider release.

1          He -- as he explained to you earlier in the hearing,

2     he's employed, gainfully employed at that, and he would be able

3     to return to his employment should Your Honor release him.  He

4     was compliant, from what I understand, with the agents, and he

5     is looking forward to consulting with an attorney once he's

6     appointed one in the D.C. area to review this matter and move

7     forward accordingly.

8          But given the fact that he does have a place to

9     reside and a job, a verifiable job that he can return to, we

10    would ask that the Court consider releasing him on conditions

11    of release.

12         THE COURT:  Very well.  Well, first let me make a

13    finding.  I don't know that I explicitly said, but I do find

14    that there's probable cause to believe that the Defendant

15    committed the crimes that are alleged in the affidavit.  The

16    affidavit is quite telling in terms of establishing probable

17    cause that it was the Defendant that's pictured in various

18    screen grabs and was participating in the rioting or the

19    break-in on January 6th at the Capitol.

20         With respect to risk of flight and danger to the

21    community, I find that the Defendant is both.  He is employed.

22    However, he's basically been on the run, trying to avoid

23    apprehension by the FBI, found in Lancaster, Pennsylvania,

24    which is apparently not his home, in a hotel.  Didn't comply

25    when the police arrived and the FBI arrived, so he's a

1   danger -- he's a risk of flight.

2          He's also a danger to the community.  The offenses

3   that the Defendant committed are certainly dangerous to the

4   (audio interference).  In any way, shape or form, to break into

5   the nation's capitol and to try and interrupt the proceedings

6   of Congress, the election of the President, is a danger to the

7   community.  I don't think I'm going to get too much argument

8   about the idea that those crimes do constitute a danger to the

9   (audio interference).

10          And so for all these reasons, I'm going to detain the

11  Defendant pending his removal to the District of Columbia,

12  where he can face charges.  Obviously, he can renew any

13  application he may have before that court for bail or for a

14  different disposition, but as of this time, he's detained

15  (indiscernible).

16          Is there anything further we need to take care of?

17          MS. PEDRAZA:  No, Your Honor.

18          MS. SYKES:  Not (indiscernible) --

19          THE DEFENDANT:  If I could ask what my charges are?

20  I would really appreciate knowing that.

21          THE COURT:  Certainly.

22          Ms. Sykes, could you recite the charges?

23          MS. SYKES:  Yes, Your Honor.  It is my understanding,

24  may be wrong, is that the Defendant had been provided with a

25  copy of the criminal complaint.

1          THE DEFENDANT:  No.  Absolutely not.  I have --

2    nobody's told me anything about what I've been charged with

3    this whole time.  I've been here for three days (indiscernible)

4    any word about it.  I've been asking everybody.  I've been

5    asking police officers.  They've been telling me different

6    things than my attorney's been telling me, than anybody's been

7    telling me.  Everybody has a difference answer.  I don't know

8    what I'm -- I have no idea what I'm charged with.

9          THE COURT:  Well, Mr. Alam, why don't you listen up

10   right now.  We'll read the charges to you, okay, in the

11   criminal complaint.

12          Ms. Sykes, go ahead.

13          MS. SYKES:  Yes, Your Honor.  The Defendant is

14   charged with one count of violation of Title 18 U.S.C.

15   Section 111(a) and (b), which is assault on a federal officer

16   with a dangerous or deadly weapon; one count of 18 U.S.C.

17   Section 1361, which is destruction of government property in

18   excess of $1,000; one count of 18 U.S.C. Section 1512(c)(2),

19   which is obstruction of an official proceeding; 18 U.S.C.

20   Section 1752(a) and (b), which is unlawful entry on restricted

21   buildings or grounds; and Title 40 U.S.C. Section

22   5104(e)(2)(d), (f), and (g), which is violent entry and

23   disorderly conduct.

24          Your Honor, we can arrange through the counsel --

25   for -- through counsel for the (indiscernible) to make sure

1  that Mr. Alam receives a paper copy of his criminal complaint

2  (indiscernible) --

3          THE COURT:  Good.  And I'll direct that that happen.

4  Thank you (audio interference).

5          All right.  Mr. Alam, you've been apprised of your

6  charges against you.  You'll be receiving a paper copy.  You'll

7  also be --

8          THE DEFENDANT:  Can I just ask which --

9          THE COURT:  -- transferred by the U.S. --

10          THE DEFENDANT:  Which officer am I being accused of

11  assaulting?  Which officer -- what's his name?

12          THE COURT:  No.  You won't be given that answer at

13  this time, but you are certainly going to be able to review

14  your charges, review the affidavit at length.  And you can find

15  out that information as part of the ordinary discovery that's

16  provided in the case, but today's hearing is not the place for

17  that.  And with that, you will be transported by the marshal to

18  D.C. to face charges there.

19          If there's nothing further, then I'm going to dismiss

20  the Defendant at this time.  I see there's nothing further.

21          Mr. Alam, you're dismissed.

22      (Proceedings concluded at 1:13 p.m.)

23                          *  *  *  *  *

24

25

12

1          **C E R T I F I C A T I O N**

2

3          I, Liesl Springer, court-approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of our ability.

7

8

9    _____

10   LIESL SPRINGER, AAERT NO. 685    DATE:  April 19, 2021

11   ACCESS TRANSCRIPTS, LLC

12

13

14         **C E R T I F I C A T I O N**

15

16         I, Alicia Jarrett, court-approved transcriber, hereby

17   certify that the foregoing is a correct transcript from the

18   official electronic sound recording of the proceedings in the

19   above-entitled matter, and to the best of my ability.

20

21

22

23   _____

24   ALICIA JARRETT, AAERT NO. 428    DATE:  April 27, 2021

25   ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)